| | | |
|---|---|---|
| LEONARD BODRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Defendant Department of Homeland Security's ("Defendant" or "DHS") Motion for Summary Judgment (Doc. No. 17). The Court, Judge Frank D. Whitney presiding, heard argument on Defendant's Motion on April 14, 2011. At the April 14 hearing, the Court understood Plaintiff's argument to include a new claim of retaliation requiring amendment of the Complaint. The Court directed the parties to submit additional briefings in support of and in opposition to Plaintiff's *ore tenus* motion for leave to amend the Complaint. For the reasons set forth, Plaintiff's *ore tenus* motion has now been withdrawn. After reviewing the pleadings, briefs, exhibits and applicable case law, and after considering the parties' oral arguments, Defendant's Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

### A. Facts

Viewing the evidence, and drawing all inferences therefrom, in the light most favorable to Plaintiff, the record contains the following undisputed facts.

Plaintiff, who is proceeding *pro se*, is an African-American male, fifty-four (54) years old at the time of filing, who was employed in various capacities in the Immigration and Naturalization

Service ("INS"), and later, after the creation of the Department of Homeland Security ("DHS"), with the INS's successor agency, United States Citizenship and Immigration Services ("CIS"). Most recently, Plaintiff was employed as a GS-12 term Adjudications Officer ("AO") in the Charlotte Field Office of CIS.

Plaintiff joined INS as an immigration information officer ("IIO") in the Charlotte Field Office in May 2002. At the time Plaintiff applied for the IIO position, he also submitted an application for a position as a term AO. Plaintiff qualified for the term AO position with a score of 91,[1] but was not selected. In 2004, Plaintiff filed a charge of discrimination with the agency Equal Employment Opportunity office ("EEO") alleging that DHS had discriminated against Plaintiff by failing to select him for the term AO position to which he had applied in 2002 and by allowing Plaintiff's co-workers to receive time-off awards after Plaintiff was told no employee would be permitted to receive such an award. Due to the agency's counsel's initial failure to respond to discovery requests and subsequent dilatory responses, an administrative law judge ("ALJ") ruled Plaintiff's allegations in the 2004 EEO charge were deemed admitted pursuant to Federal Rule of Civil Procedure 36(a). In May 2006 the ALJ found in favor of Plaintiff and ordered that DHS submit to Plaintiff an unconditional offer of placement as a term AO. Plaintiff entered on duty as a term AO in the Charlotte Field Office on October 1, 2006, with retroactive effective date to March 26, 2004. Plaintiff's term appointment was set to expire in January 2009. (Bodrick Dep. II at 19-20).

While employed at CIS in this temporary capacity, Plaintiff submitted a number of

---

[1] There is some dispute as to whether Plaintiff initially qualified for a position with CIS a score of 91 or 92. (Compare Doc. No. 1 at 4 with Doc. No. 23-9 at 1). Regardless of which score Plaintiff received, such dispute is not material for the purposes of Defendant's Motion.

applications for available permanent vacancies, but was never granted an interview or selected. In October 2006, Plaintiff submitted an application for vacancy announcement CIS-PJN-124303 ("Vacancy No. 124303"), a position as a permanent AO in the Charlotte Field Office. In applying for the position, Plaintiff submitted two separate resumes, one online and the other via facsimile. The resumes contained different information and covered different periods of Plaintiff's education and work-history. At the request of Rodolfo Lara, the acting director of the Atlanta District Office of CIS and the selecting official on Vacancy No. 124303, Denise Barrett, a human resources specialist with Customs and Border Protection working in Burlington, Vermont, prepared certification lists to fill the vacancy. Candidates applying for Vacancy No. 124303 answered questionnaires surveying their relevant experience, education, work-history, and other factors; the candidates' answers were then given numerical values which determined the applicants' qualification scores. Candidates' qualifications were then reviewed by Barrett to confirm their accuracy and to determine if they could be certified for consideration at the GS-9, GS-11, and GS-12 levels. Barrett alone was responsible for conducting the qualifications analysis and compiling the certification lists and she did not consult with any management-level officials in either the Charlotte or Atlanta CIS offices. Barrett had never met Plaintiff and was unaware of Plaintiff's race, gender, or EEO history at the time she compiled the lists of qualified candidates.

Barrett only reviewed one of Plaintiff's submitted resumes, not realizing that Plaintiff's two resumes contained differing information. Barrett concluded that, based on the resume she did review, Plaintiff did not possess the minimum qualification standards required for Vacancy No. 124303 and therefore did not certify Plaintiff on any of the lists submitted to the recommending official. The Office of Personnel Management ("OPM") promulgates strict hiring regulations, and recommending officials and selecting officials are not given the discretion to deviate from a list of

candidates that have been certified to possess the minimum qualifications for a given federal employment vacancy. (Supp. Barrett Decl. ¶¶ 8-10). A selecting official may only consider those candidates that are included on a certified list.[2]

Richard Gottlieb, the director of the CIS Charlotte Field Office and recommending official for Vacancy No. 124303, recommended Edward Szeman, a white male, for the position. Szeman had been employed in the Charlotte Field Office for about a year prior to his selection and "had demonstrated the knowledge and ability to become an Adjudications Officer." (Doc. No. 23-17 at 4). Additionally, Szeman ranked first on the list of candidates Barrett certified at the GS-9 level, with the help of a veteran's preference and a "score" of 91. (Supp. Barrett Decl. ¶ 12; Doc. No. 23-17 at 4). Lara selected Szeman for the position. The GS-11 and GS-12 lists were returned unused. Plaintiff discovered he was not selected for Vacancy No. 124303 on June 1, 2007.

On June 6, 2007, shortly after Plaintiff learned of his non-selection for Vacancy No. 124303, Plaintiff was informed that a co-worker in the Charlotte field office filed a sexual harassment grievance against him, and that an investigation would be launched into Plaintiff's alleged conduct. Plaintiff was further informed that DHS has a duty to investigate any and all allegations of sexual harassment. (Doc. No. 18-10 at 2). Plaintiff filed an informal complaint with the EEO on the same day, June 6, 2007, alleging "harassment and retaliation" predicated on Plaintiff's belief that the sexual harassment investigation "is based on my inquiries about continuing my employment and my

_____

[2] The basis for Plaintiff's non-selection for Vacancy No. 124303 is, at root, the recommending and selecting officials lacking the authority and discretion to select Plaintiff after he was erroneously left off the certified list of candidates due to a non-discriminatory administrative oversight. This fact is dispositive of Plaintiff's cause in the Court's view. However, in an abundance of caution, and given the contentious and lengthy nature of the April 14, 2011 summary judgment hearing, the Court will squarely address each of *pro se* Plaintiff's arguments in an attempt to educate Plaintiff as to the requirements of the law and why his claims fall short. Accordingly, this Order is substantially longer than is perhaps legally necessary.

previous [2004] EEO complaint." (Id. at 7). Pursuant to this complaint, Barrett reviewed Plaintiff's application for Vacancy No. 124303 and discovered her error in failing to compare Plaintiff's two resumes. After re-evaluating Plaintiff's work experience, education, training, and qualifications, it was determined that Plaintiff should have been included on the list of candidates submitted to the recommending official. Had Plaintiff been properly evaluated initially, he would have ranked fourth on the list of candidates certified at the GS-9 level with a score of 90. (Supp. Barrett Decl. ¶ 12). Plaintiff would have landed on the GS-9 list behind Szeman, an unidentified candidate with a score of 91 and no veteran's preference, and an unidentified candidate with a score of 90 and a veteran's preference. (Supp. Barrett Decl. Exh. B, C). Additionally, Plaintiff would have been certified at the GS-11 level, although it is not clear where on this list Plaintiff would have "ranked," because the GS-11 list had been returned unused.

Despite Plaintiff's fourth-place ranking on the GS-9 certification list, on September 4, 2007, Plaintiff was nevertheless offered a Priority Consideration Certificate whereby "[Plaintiff's] name alone [would be] certified to the selecting official for an appropriate vacancy within the commuting area where consideration was lost or any other area of [Plaintiff's] choice." (Doc. No. 18-7). The "Delegated Examining Operations Handbook: A Guide for Federal Agency Examining Officers" ("DEO Handbook") defines a "priority consideration" as "a special placement priority that is given to an eligible who was previously denied consideration due to an administrative error . . . ." (Supp. Barrett Decl. Exh. A-1). The DEO Handbook notes that "[i]t is important to remember that there is *no situation where an eligible must be selected*, except for the special selection priority of a well-qualified eligible in the Interagency Career Transition Assistance Program (ICTAP)." (Id. (citing 5 C.F.R. Part 330) (emphasis added)). Plaintiff was not eligible under ICTAP. The DEO Handbook states that placement on a priority consideration list is an appropriate remedy for a

candidate who "was left off a certificate but would not have been within reach for selection even if he/she had received proper treatment." (Id. at A-3). Plaintiff was informed that priority consideration does not guarantee selection, and that the selecting official would be free to either select Plaintiff for the next available vacancy, or request that a competitive list be referred. (Doc. No. 18-7; Supp. Barrett Decl. ¶¶ 14-17).

Plaintiff filed a formal charge of discrimination with the EEO, case number HS-07-CIS-001840, on September 10, 2007, alleging discriminatory non-selection for Vacancy No. 124303 based on Plaintiff's race and gender, as well as retaliation based upon Plaintiff's prior 2004 EEO charge of discriminatory non-selection for the term AO position. (Doc. No. 18-2; see also Doc. No. 27-1 at 4). On October 2, 2007, Barrett submitted Plaintiff's priority certification to the Atlanta District Office for consideration. Plaintiff was not selected from the priority consideration certificate for a permanent position. Plaintiff learned that his name had been submitted for priority consideration and that the certificate had been returned unused via email dated February 1, 2008. (Doc. No. 23-16 at 3). In December 2007, Plaintiff received a letter of reprimand for the sexual harassment charge, but received no other training or counseling. (Doc. No. 18-10). Plaintiff left the Charlotte field office when his term expired on January 9, 2009. Plaintiff received high marks and awards throughout his tenure as a term AO, including the month prior to the expiration of his term. Plaintiff has continued his public service and is currently employed as an immigration program analyst with the Department of Labor.

**B.     Procedural History**

After receiving a notice-of-rights letter from the EEO, Plaintiff filed suit using a form Complaint on October 21, 2009, alleging race and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., as well as age

discrimination in violation of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C.
§ 623. Specifically, Plaintiff alleges that DHS discriminated against him by failing to select him for
Vacancy No. 124303 and retaliated against him for his 2004 EEO complaint and for his continued
inquiries into securing permanent employment by launching a sexual harassment investigation
against him. (Doc. No. 1 at 4). In support of his claims, Plaintiff alleges that after he entered on
duty as a term AO in October 2006, he was treated differently than other new AOs. Plaintiff alleges
that while other new AOs were immediately trained to conduct field interviews, Plaintiff was
relegated to ministerial tasks and forced to move desks and locations within the Charlotte Field
Office. (Id. at 9). Additionally, Plaintiff alleges that his experience with CIS qualified him for a
permanent employment, yet he was repeatedly not selected for permanent positions, nor even from
the priority consideration certificate. (Id. at 10).

In July 2010, DHS moved to dismiss Plaintiff's age discrimination claim, arguing that he had
failed to exhaust his administrative remedies. (Doc. No. 8). The Court granted DHS's motion,
finding that the Court lacked subject matter jurisdiction as to that claim, but preserved Plaintiff's
race and gender discrimination claims as well as his retaliation claim. (Doc. No. 13).

Defendant now moves for summary judgment. Plaintiff responded to Defendant's motion
on February 17, 2011, but due to Plaintiff's *pro se* status, the Court issued a <u>Roseboro</u> notice
warning Plaintiff of his burden in confronting a motion for summary judgment and providing
Plaintiff an opportunity to supplement his response. (Doc. No. 21). Plaintiff supplemented his
response on March 7, 2011, and again on March 14, 2011 (Docs. Nos. 23, 25). Defendant replied.
(Doc. No. 26). On April 14, 2011, a summary judgment hearing was held before the Honorable
Frank D. Whitney, United States District Judge, who was originally assigned this case. At oral
argument, it appeared to the Court that Plaintiff raised a new claim of retaliation that had not

7

appeared in the Complaint. Specifically, Plaintiff seemed to argue that by failing to exercise Plaintiff's priority consideration for a permanent AO position, Defendant retaliated against him for filing the 2007 EEO charge of discrimination that was the precursor to this suit. Because Defendant was not aware of this claim and considering Plaintiff's *pro se* status, Judge Whitney construed Plaintiff's argument as an *ore tenus* motion for leave to amend his complaint to add a new retaliation claim. Judge Whitney directed Defendant to respond to Plaintiff's motion by May 18, 2011, and directed Plaintiff to reply no later than June 18, 2011. Like Defendant's Motion for Summary Judgment, Plaintiff's *ore tenus* motion to amend has now been fully briefed and is ripe for disposition.

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure directs the Court to enter summary judgment where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Although the moving party bears the initial responsibility for informing the Court of the basis for its motion and identifying what evidence demonstrates the absence of a genuine issue of material fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The facts are required to be viewed in the light most favorable to the nonmoving party, and where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. See, e.g., Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (citation omitted).

"The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Coleman v. United States, 369 Fed. App'x

459, 461 (4th Cir. 2010) (citing <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 875 (4th Cir. 1992)).

Instead, a party asserting that a fact cannot be or is genuinely disputed must cite to particular

materials in the record, including depositions, documentary evidence, and affidavits and

declarations. Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 247-48 (1986) (emphasis included in the original).

While considering Defendants' Motion, the Court remains mindful of Plaintiff's *pro se*

status. *Pro se* filings are to be liberally construed and must be held to "less stringent standards than

formal pleadings drafted by lawyers." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (citations

omitted).

## III. Discussion

### A. *Ore Tenus* Motion for Leave to Amend the Complaint

Before turning to the merits of Defendant's Motion for Summary Judgment, the Court will

briefly address Plaintiff's *ore tenus* motion for leave to amend the Complaint to add a new claim of

retaliation. At the April 14, 2011 summary judgment hearing, Plaintiff argued that by failing to

select Plaintiff for a permanent position from the priority consideration certificate, Defendant

retaliated against Plaintiff for filing the charge of discrimination (case number HS-07-CIS-001840)

with the agency EEO that preceded the instant suit. The Court construed this argument as a motion

for leave to amend to add a new claim and directed the parties to brief the issue.

Plaintiff argues in his reply brief (Doc. No. 28) that amendment of his Complaint is not

necessary, and indeed clarifies that he is not pursuing a new or separate claim of retaliation that was

not already contained in the Complaint. "Non-selection on the Priority Consideration Certificate

is not a new charge and did not need to be filed, as such, with [the EEO]. It was argued as part of the administrative process and was stated as part of the original charge." (Doc. No. 28 at 6). Instead, Plaintiff appears to include the allegation of non-selection from the priority consideration as background evidence of Plaintiff's existing discriminatory non-selection claim, arguing that "[n]on-selection is the issue and not whether or not the Priority Consideration Certificate was used. The fact that the Priority Consideration Certificate was issued in the name of [p]ro se Plaintiff only and returned unused by the same Recommending Official shows discriminatory animus." (Id. at 2).

A review of the Complaint confirms that Plaintiff's reference to the priority consideration is not intended to raise a new claim for relief, but rather is presented as a factual allegation in support of Plaintiff's discriminatory non-selection claim. Plaintiff includes two counts of Title VII violations in his Complaint, for discrimination and retaliation. The first, for "non-selection–continued pattern of race discrimination [sic]," is specifically supported by the allegation that "on June 1, 2007, I became aware that I was not selected for the permanent position of Adjudications Officer–GS-1801-9/12 in the Charlotte Field Office, as advertised under [Vacancy No. 124303]." (Doc. No. 1 at 4). Plaintiff further alleges that:

> Despite my exemplary performance at the agency . . ., the records show, for example, that vacancy id umbers 152151, 157527, 141261 [sic] were positions for which I was not selected. After review by the Human Resources Department, I was granted *priority consideration* for vacancy announcement number PJN124303 (cited in Count 1). The priority consideration was returned unused by the Agency. Despite being eligible for subsequent adjudicator openings, I was not interviewed or selected.

(Id. at 10) (emphasis included in the original). This reference to the priority consideration certificate, explicitly made in connection to Count 1, is the only one contained in the Complaint.

Judge Helprin, the ALJ assigned to review case number HS-07-CIS-001840, reached a similar conclusion. On November 2, 2008, Plaintiff sought to amend his administrative charge to

include, *inter alia*, "the like and related" claim of non-selection from the priority consideration as a separate claim of retaliation, noting that adjudicator officer positions were available in the Charlotte Field Office at the time Defendant received Plaintiff's priority consideration certificate, yet Plaintiff's priority consideration was returned unused. (Doc. No. 28 at 10-11). Judge Helprin denied the amendment, however, finding that the priority consideration issue "amounts to evidence/argument concerning his primary claim: nonselection for [Vacancy No. 124303]." (Doc. No. 27-7 at 3). Instead, Judge Helprin allowed "such argument [to be] considered as background evidence in his primary claim." (Id.)

Although Plaintiff could have sought to amend his Complaint to include a distinct claim arising from non-selection from the priority consideration certificate, use of the priority consideration as background evidence is, of course, permitted for the purposes of Plaintiff's existing claims. The Supreme Court recently clarified in <u>National Railroad Passenger Corporation v. Morgan</u>, 536 U.S. 101 (2002) that discrete discriminatory acts, "such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and each discrete "incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" 536 U.S. at 114. Thus a Title VII plaintiff seeking to assert a distinct claim arising from a discrete discriminatory act must raise such a claim in the federal complaint in order to recover. <u>See id.</u> at 113 ("[t]he existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed"); <u>see also</u> <u>Nealon v. Stone</u>, 958 F.2d 584, 590 (4th Cir. 1992) (holding that a plaintiff may assert a retaliation claim that is "reasonably related to and growing out of" the allegations contained in a precursor administrative charge for the first time in federal court, without

having to first exhaust administrative remedies); <u>Jones v. Calvert Group, Ltd.</u>, 551 F.3d 297, 302-04 (4th Cir. 2009) (reaffirming <u>Nealon</u>).  However, <u>Morgan</u> expressly recognized that discrete acts of discrimination which are themselves not independently actionable, may still be relevant and admissible as background evidence in support of an actionable claim.  536 U.S. at 113.

It is now evident that the Court misapprehended Plaintiff's intentions in raising the issue of his non-selection from the priority consideration.  Instead of seeking to assert a separate actionable claim for retaliation arising from Plaintiff's non-selection from the priority consideration, Plaintiff raised that issue as background evidence in support of his existing discriminatory non-selection claim.  Accordingly, the Court now construes Plaintiff's reply brief (Doc. No. 28) as a motion to withdraw the *ore tenus* motion for leave to amend the Complaint.[3]  Plaintiff's *ore tenus* motion to amend is hereby WITHDRAWN.  The issue of Plaintiff's non-selection from the priority consideration certificate will be considered as background evidence in support of Plaintiff's claim of discriminatory non-selection for Vacancy No. 124303.

## B.     Defendant's Motion for Summary Judgment

Defendant moves for summary judgment, arguing that Plaintiff has failed to present any evidence of discrimination and instead relies only on conclusory allegations.  Defendant argues that the uncontroverted evidence contained in the record establishes that there was no correlation between Plaintiff's non-selection for the permanent AO position and Plaintiff's race or gender.  Additionally, Defendant argues that Plaintiff has not presented sufficient evidence that the 2007 sexual harassment investigation was retaliatory in nature.  The Court agrees.

---

[3] Because the Court *sua sponte* converted *pro se* Plaintiff's argument during the summary judgment hearing into a motion for leave to amend, it is appropriate to likewise *sua sponte* convert Plaintiff's argument in opposition to the necessity of amendment to a motion to withdraw the *ore tenus* motion to amend.

1.  Racial and Gender Discrimination Claim.

A plaintiff alleging racial discrimination may avert summary judgment in one of two ways. First, under the "pretext" model established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), a plaintiff must establish a prima facie case of discrimination. Once the plaintiff makes such a showing, "the defendant must respond with evidence that it acted on a legitimate, non-discriminatory basis. If the defendant does so, the plaintiff is then obliged to present evidence to prove that the defendant's articulated [non-discriminatory] reasons were a pretext for unlawful discrimination." <u>Worden v. Suntrust Banks, Inc.</u>, 549 F.3d 334, 341 (4th Cir. 2008) (citing <u>Lovelane v. Martin</u>, 355 F.3d 766, 786 (4th Cir. 2004)).

Second, under the "mixed-motive" framework, a plaintiff must offer sufficient evidence of discrimination so that a reasonable jury could conclude that discrimination was a motivating factor for the adverse employment action, that is, a "protected trait . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 286 (4th Cir. 2004). Once the plaintiff has made a prima facie case of discrimination, "the employer can avoid liability by proving that it would have made the same decision in the absence of discriminatory motivation." <u>Worden</u>, 549 F.3d at 342.

Although the Supreme Court held in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003), that direct evidence of discrimination is no longer required for a plaintiff to receive a "mixed-motive" jury instruction, the Fourth Circuit has not resolved what level of proof a plaintiff must present before proceeding under a mixed-motive analysis. See <u>Worden</u>, 549 F.3d at 342 n.7. Here, despite claiming otherwise, Plaintiff has presented no direct or circumstantial evidence of discrimination. Plaintiff instead invites the Court to infer discriminatory animus based only on the fact that he is an

African-American male that repeatedly applied for permanent positions in the Charlotte field office and was denied each time. Regardless of what level of proof is necessary to proceed under the "mixed-motive" analysis, Plaintiff has failed to satisfy it. Without any evidence whatever of Plaintiff's race or gender "play[ing] a role in the employer's decisionmaking process," Hill, 354 F.3d at 286, Plaintiff may only rely on the burden-shifting "pretext" framework to avert summary judgment.[4]

Under the "pretext" framework, in order to make out a prima facie case of discrimination, Plaintiff must present sufficient evidence for a reasonable jury to conclude: (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for that position; and (4) the defendant rejected his application under circumstances that give rise to an inference of unlawful discrimination. See Bryant, 333 F.3d at 544-45; Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

While the first three elements are uncontested,[5] Defendant argues that Plaintiff has failed to sufficiently make out a prima facie case because he has not presented any evidence suggesting that

_____

[4] Some courts, such as the Fifth Circuit, have merged the mixed-motive and pretext analysis into a "modified McDonnell Douglas approach" whereby "the plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff . . . ." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). Once the defendant has met its burden, "'the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination . . .; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic . . . .'" Id. (quoting Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)). However, even under this approach, Plaintiff cannot satisfy the second possible prong of demonstrating Defendant's articulated reason is illegitimate because Plaintiff has not presented any evidence that Plaintiff's membership in a protected class was a "motivating factor" for the decision not to promote. Plaintiff is left to rely on the traditional McDonnell Douglas framework in order to prevail.

[5] The Court notes that had Plaintiff been properly evaluated initially, he would have been included on the certified list of candidates at the GS-9 level. (Supp. Barrett Decl. ¶ 12). Plaintiff was therefore "qualified" for the position, though the record indicates that Plaintiff was not the "best qualified" candidate. (See id.).

DHS's promotion decision was based on discriminatory animus. Instead, Defendant contends the uncontroverted facts indicate that the decision to leave Plaintiff off the list of certified candidates was left to Denise Barrett, a remote human relations specialist with no knowledge of Plaintiff's race, gender or prior EEO history at the time of the evaluation. (Doc. No. 18 at 10). Plaintiff, however, argues that Defendant's discriminatory animus is evident because Plaintiff is African-American, Plaintiff was more qualified for the permanent AO position for which he was passed-over than was the eventual selectee, and Plaintiff applied for several permanent positions in the Charlotte field office that neither he nor any other African-American was selected for. (Doc. No. 20 at 7-11).

At first glance, it is not apparent that Plaintiff has successfully made out a prima facie case of discrimination. Plaintiff's argument suffers from a number of flaws, most notably that the record does not support Plaintiff's assertion that he was more qualified for Vacancy No. 124303 than the selectee. Additionally, the mere fact that Plaintiff is a member of a protected class and was not selected for a permanent position is not necessarily probative of Defendant's animus. See Velez v. City of Chicago, 442 F.3d 1043, 1049 (7th Cir. 2006) (holding evidence of derogatory statements was not probative of discriminatory animus where there was no evidence of a causal connection between the statements and the adverse employment action).

However, even assuming for the sake of argument that Plaintiff has made out a prima facie case of discrimination and that, when viewing the evidence and taking all inferences in Plaintiff's favor, it is possible to infer discriminatory animus from the circumstances of Defendant's promotion decision, Plaintiff's claim still cannot survive summary judgment. Defendant has successfully presented sufficient evidence to establish a legitimate, non-discriminatory reason for denying Plaintiff the permanent position–namely that a more-qualified candidate was selected based on neutral, objective hiring criteria, and Plaintiff was never presented as a potential candidate to the

recommending or selecting officials. (Supp. Barrett Decl. ¶¶ 8-12; Lara Decl. ¶¶ 3-4; Doc. No. 23-17 at 4). The burden thus shifts back to Plaintiff to demonstrate Defendant's articulated reason is a mere pretext for discrimination.

"Once the question comes down to pretext, a plaintiff 'must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.'" Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). Plaintiff has failed to make this showing. Plaintiff attempts to discredit Defendant's proffered explanation in a number of ways, but presents no evidence of his own and relies only on conclusory statements directly controverted by the evidence in the record.

First, Plaintiff argues that Defendant's animus is demonstrated by the fact that the recommending official, Richard Gottlieb, as Plaintiff's second-line supervisor, knew of Plaintiff's interest in vacancy No. 124303 as well as Plaintiff's qualifications for the post, and yet Plaintiff's name was not forwarded to the selecting official. (Doc. No. 23 at 14). However, the record makes clear that Plaintiff was not included among the list of certified candidates submitted to the recommending official due simply to an administrative error by Denise Barrett, the human resources specialist tasked with compiling a list of candidates for the vacancy at issue. Barrett operates out of Burlington, Vermont, had never met Plaintiff and did not know Plaintiff's race or gender at the time she compiled her list. (Supp. Barrett Decl. ¶¶ 1-2, 20). Because Plaintiff was initially left off this list of candidates, Gottlieb and Rodolfo Lara, the selecting official in Atlanta, did not have the discretion to select Plaintiff for the vacancy. (Id. ¶¶ 8-10). Thus, Gottlieb's failure to recommend Plaintiff despite Plaintiff's exclusion from the list is not indicative of racial animus as Plaintiff concludes; Gottlieb simply did not have the authority or discretion to recommend Plaintiff.

Although Defendant concedes that Barrett erred in failing to initially include Plaintiff on the list of certified candidates, such error was harmless as Plaintiff would have remained out of reach of consideration. As the selectee for Vacancy No. 124303, Edward Szeman, "scored" a 91 compared to Plaintiff's 90, and had the benefit of a veteran's preference, which Plaintiff did not. (Id. ¶ 12). Plaintiff alleges that his experience, performance at an entry-level writing exam, and successful completion of an adjudications officer training course at the Federal Law Enforcement Training Center ("FLETC") make him better-qualified than Szeman for a permanent AO position. However, Plaintiff has presented no comparative evidence of Szeman's qualifications–or any other evidence–to support this assertion. In fact, the record reveals that had Plaintiff been included on the GS-9 candidate list, he would have placed fourth, behind Szeman, another candidate with a score of 91 and no veteran's preference, and a candidate with a 90 and a veteran's preference. (Id.; id., Exh. B, C).

Plaintiff also argues that Gottlieb's failure to exercise "management flexibility" in Plaintiff's favor is probative of animus. On September 6, 2007, Gottlieb sent an email to the Charlotte Field Office staff announcing that Richard Ferrell, a white male term AO, was hired into a permanent position and would enter on duty on September 16, 2007. (Doc. No. 23-8 at 1). Ferrell had been non-competitvely converted from a term AO to a permanent AO. Plaintiff argues, in essence, that but for Defendant's discriminatory animus, Plaintiff would have been treated in a similar manner and been non-competitively converted into a permanent position. However, Ferrell was converted pursuant to an out-dated authority that had existed under legacy-INS when it was within the rubric of the Department of Justice, but which DHS no longer employed. When the error was discovered, Ferrell's non-competitive conversion was undone, and Ferrell was included on a competitive referral

list for a new vacancy.[6]  (Id. at 4-6).  Defendant's failure to convert Plaintiff into a permanent employee outside the competitive process is not evidence of animus, as Plaintiff contends, but instead the result of Defendant lacking the very authority Plaintiff argues should have been implemented in his favor.

Plaintiff's allegations of discriminatory animus are further undermined by Defendant's actions when it learned of its error in failing to properly evaluate Plaintiff's qualifications for Vacancy No. 124303.  Once Barrett learned of her error in failing to include Plaintiff in the list of candidates forwarded to Gottlieb, she gave Plaintiff a priority certification certificate to be applied to the next vacancy.  Plaintiff argues that Defendant's decision not to exercise Plaintiff's priority consideration certificate and hire Plaintiff into a permanent position creates an inference of discrimination or retaliation, because the certificate was returned unused after Plaintiff filed his administrative EEO charge of discrimination.  However, the selecting official was under no obligation to hire a candidate with Plaintiff's type of priority certification (Supp. Barrett Decl. ¶¶ 14-19; id. Exh. A), and Plaintiff has presented no evidence to suggest that the selecting official's decision to have a competitive list referred, instead of hiring Plaintiff from the priority consideration certificate, was anything other than a legitimate exercise of his discretion under the priority consideration policy.  (Id.; Doc. No. 18-7).  To conclude otherwise would require the Court to assume more facts than are at its disposal.

Second, Plaintiff argues that Defendant's animus is demonstrated by Defendant having

---

[6] Ferrell was apparently added to the competitive certified candidate list as a "name-request," after missing the application date.  (Doc. No. 23-7 at 6).  It is not clear from the record what is meant by "name-request" or what privileges, if any, being added as a "name-request" gave Ferrell.  Thus, to the extent that Plaintiff includes this allegation to suggest that Gottlieb or the selecting official *could have* unilaterally added Plaintiff to the list of candidates, there is no evidence in the record to indicate that such authority actually existed.  (See Supp. Barrett Decl. ¶¶ 8-10).

engaged in a pattern of on-going discriminatory conduct both by consistently declining to hire Plaintiff and other African-American males into permanent AO positions, and treating Plaintiff differently than other term AO employees when he entered on duty in October 2006. (Doc. No. 1 at 9; Doc. No. 23 at 16-17).

Plaintiff argues that Defendant, and in particular Gottlieb, have been engaging in discrimination against African-Americans since 2002 when Plaintiff was not selected for a term AO position. In support of this claim, Plaintiff points to the administrative law judge's 2006 conclusion that DHS discriminated against Plaintiff when he applied for the term AO position in 2004. However, the Court cannot give preclusive effect to judgments based on deemed admitted facts, such as the judgment of the ALJ (Doc. No. 1 at 12), and thus the 2004 administrative judgment is probative of nothing. Fed. R. Civ. P. 36(b); Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper 18 A Federal Practice & Procedure § 4443 (2d ed. 2010) ("To the extent that individual issues or entire judgments rest on admission . . . a major element of preclusion is missing . . . . and a finding based on admission that results from failure to respond to a request for admissions likewise does not support issue preclusion").[7]

Plaintiff's naked allegations of disparate treatment and disparate hiring practices are also

---

[7] Furthermore, the 2004 incident resulted in its own discrete adverse employment action (i.e. non-selection as a term AO) and is therefore time-barred and not actionable in this case. See Morgan, 536 U.S. at 113 (holding "discrete discriminatory acts are not actionable if time barred, even when they relate to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act"). To the extent Plaintiff attempts to tie all alleged conduct into a single on-going cause of action under the continuing violation theory in order to recover for other time-barred incidents of discrete conduct, such attempt must fail. Holland, 487 F.3d at 219 ("[t]he continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination, i.e., when the incidents make up part of a hostile work environment claim" (emphasis added)); Gilliam v. South Carolina Dep't of Juvenile Justice, 474 F.3d 134, 140 (4th Cir. 2007) (same). The limitations period cannot be extended to include additional discriminatory acts "merely because the plaintiff asserts that such discrete acts occurred as part of a policy of discrimination," Holland, 487 F.3d at 220, particularly here, where Plaintiff has already received the benefit of an administrative judgment in his favor.

directly contradicted by the evidence in the record. Defendant presented evidence that Plaintiff was actually given *more* responsibility than most new AO's and that the dissimilar treatment Plaintiff alleges he faced was the result of operational need, not a function of race. (Supp. Gottlieb Decl.¶ 12). Additionally, DHS presented evidence that a number of racial minorities were appointed as AOs during the relevant period. Gottlieb himself recommended four black males to AO positions since the creation of DHS, all of whom were selected, and recommended four additional black males to the equivalent of AO positions under legacy INS. (Id. ¶¶ 4,7). Gottlieb has also recommended five black females to AO positions. (Id. ¶ 5). Plaintiff argues that these minorities were hired into temporary positions and because only a single black male occupied a permanent AO position during the relevant period, DHS engaged in discrimination. (Doc. No. 23 at 16-17). However, Plaintiff again fails to present any evidence of the number of permanent positions available, the number of African-American males that applied for permanent positions during the relevant period, the number of African-Americans occupying other positions in the office, discrimination or disparate-impact in evaluating African-American candidates, or any other evidence which might support a claim of disparate hiring practices.

Ultimately, Plaintiff's argument amounts to no more than his personal belief that he, rather than the selectee, was best qualified for Vacancy No. 124303. Not only is this conclusion unsupported by the record, but to the extent that Plaintiff alleges that Defendant's selection criteria is flawed or that DHS violated its own administrative procedures in determining whom to promote, such claim is without merit. See Grier v. Sec'y of the Army, 799 F.2d 721, 725 (11th Cir. 1986). There is no evidence in the record that suggests DHS's hiring decision was arbitrary, capricious, constituted an abuse of discretion, or was otherwise not in accordance with law. Id. (citing 5 U.S.C. § 706(2)(A)). In fact, the record indicates the opposite–that Defendant acted consistently with its

own internal regulations, and that had Defendant acted as Plaintiff suggests it should have, it would have departed wildly from established procedure. Promotion decisions need only be supported by "a rational connection between the evidence and the agency's decision." Id. (citation omitted). Because here, as in Grier, "the personnel officer gave rational reasons for the choice of the selectee," this Court is "not empowered to substitute [its] judgment for that of the [personnel office] as to which candidate was best qualified for the permanent position." Id. (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)).

The Court has little doubt that Plaintiff was qualified for a position as a permanent Adjudications Officer, indeed, well-qualified. Plaintiff seeks relief as one of possibly hundreds of qualified but disappointed job applicants frustrated by the federal government's rigid and inflexible hiring standards. In order to recover, however, Plaintiff needs evidence that his frustration was the result of unlawful discrimination. While a plaintiff may rely on factual allegations and mere inference to avoid dismissal at earlier stages of litigation, at the summary judgment stage it is necessary for a plaintiff, even a *pro se* plaintiff, to provide sufficient evidentiary support so that a reasonable jury may find in his favor. Here, Plaintiff has simply failed to present any evidence that Defendant's legitimate, non-discriminatory reason for not selecting Plaintiff for Vacancy No. 124303 was a pretext for racial or gender discrimination. In short, there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law on Plaintiff's claims of racial and gender discrimination.

## 2. Retaliation Claim

Plaintiff next argues that the sexual harassment charge filed against Plaintiff and the ultimate letter of reprimand issued against Plaintiff constitutes retaliation for Plaintiff's 2004 charge of discrimination against DHS. (Doc. No. 1 at 4). Claims of retaliation brought under Title VII, like

claims of discrimination, are analyzed under the burden-shifting framework of <u>McDonnell Douglas</u>.
<u>See</u>, <u>e.g.</u>, <u>Laber v. Harvey</u>, 438 F.3d 404, 432 (4 Cir. 2006). To establish a prima facie case of retaliation, Plaintiff must show: (1) he engaged in a protected activity, such as filing a complaint with the EEO; (2) DHS acted adversely against him; and (3) the protected activity was causally connected to the adverse action. <u>Holland</u>, 487 F.3d at 218.

Plaintiff has failed to make out a prima facie case. While it is undisputed that Plaintiff engaged in a protected activity when he filed his charge of discrimination with the EEO in 2004, there is no evidence that Defendant acted adversely against him. The sexual harassment charge was made pursuant to a bona fide sexual harassment complaint, and Plaintiff himself admitted touching the complainant on the shoulder. (Bodrick Dep. II at 66-67). DHS has a legal obligation to investigate sexual harassment claims that are brought to its attention. <u>See</u>, <u>e.g.</u>, <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 805 (1998). Additionally, investigations into conduct by a plaintiff resulting from a complaint filed by a co-worker are not "adverse actions" for the purposes of a Title VII retaliation claim. <u>See</u>, <u>e.g.</u>, <u>Bupp v. Postmaster Gen.</u>, 1999 WL 1272758, EEOC Request No. 01990350 at *1 (Dec. 21, 1999). Furthermore, activity that is not used "as a basis to detrimentally alter the terms and conditions of the [plaintiff's] employment . . .[does] not constitute an adverse employment activity." <u>Flateau v. South Carolina Comm'n for the Blind</u>, 50 Fed. App'x 653, 655 (4th Cir. 2002) (citation omitted). Here, Plaintiff's performance evaluations were not affected by the investigation (Docs. Nos. 18-16, 18-17, 18-18), and the only disciplinary action taken against Plaintiff was the issuance of a letter of reprimand. (Doc. No. 18-10 at 4). Additionally, Plaintiff was not removed from his position, but left DHS after his term expired in January 2009. (Bodrick Dep. II at 18-19). Simply put, there is no evidence of an adverse employment action taken by Defendant.

Even if the sexual harassment investigation did constitute an adverse action for the purposes of a Title VII retaliation claim, Plaintiff has presented no evidence connecting this investigation to Plaintiff's 2004 charge of discrimination. Plaintiff's mere statement the investigation was pursued as a result of Plaintiff's charge does not make it so.

Plaintiff cannot point to any material contained in the record and instead piles inference upon inference based on personal belief and conclusory allegations to support his claim of retaliation. In short, Plaintiff has failed to forecast sufficient facts from which a reasonable jury may infer that he was subjected to a sexual harassment investigation due to a retaliatory animus. No genuine dispute exists as to Plaintiff's retaliation claim, and Defendant is entitled to summary judgment.

## IV. CONCLUSION

IT IS THEREFORE ORDERED, that Defendant's Motion for Summary Judgment (Doc. No. 17) is hereby GRANTED. Summary judgment shall be entered in favor of Defendant.

IT IS SO ORDERED.

Signed: August 10, 2011

Graham C. Mullen
United States District Judge